PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# MIDLAND/ ODESSA DIVISION

|  |  |
|---|---|
| HFT Solutions, LLC., <br><br> *Plaintiff/* <br><br> *Counterclaim Defendant,* <br><br> v. <br><br> OPTIVER US LLC and OPTIVER TRADING US LLC, <br><br><br> *Defendants/* <br><br> *Counterclaim Plaintiffs.* | Civil Action No. 7:25-cv-00415-DC-DTG <br><br><br> **JURY DEMANDED** |

**PLAINTIFF HFT SOLUTIONS, LLC'S OPPOSITION TO OPTIVER'S
MOTION FOR INTRA-DISTRICT TRANSFER VENUE**

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................. 1

II.    LEGAL STANDARD.......................................................................................... 1

III.   ARGUMENT ................................................................................................... 3

a.     Access to Sources of Proof Does Not Favor Transfer ............................................. 3

b.     Compulsory Process Does Not Favor Transfer ...................................................... 5

c.     Willing Witnesses Do Not Favor Transfer ............................................................ 6

d.     Practical Problems Relating To Judicial Economy Do Not Favor Transfer ......................... 10

e.     Court Congestion Disfavors Transfer ................................................................ 10

f.     Local Interest Factors Is Largely Neutral Because Infringement Largely Occurs
Elsewhere ................................................................................................ 11

IV.    CONCLUSION................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**

*Def. Distributed v. Bruck*,
   30 F.4th 414 (5th Cir. 2022)............................................................................................. 2

*Hammers v. Mayea-Chang*,
   No. 2:19-cv-181, 2019 WL 6728446 (E.D. Tex. Dec. 11, 2019) ............................................ 2

*In re Clarke*,
   94 F.4th 502 (5th Cir. 2024) ................................................................................... 2, 3, 11

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)....................................................................................... 7

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) .......................................................................................... 1

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ......................................................................................... 5

*Intent IQ, LLC v. MNTN, Inc.*,
   Case No. 7:25-cv-00246-DC-DTG, Dkt. 55 (W.D. Tex, Mar. 23, 2026)................................. 7

*Sanger Ins. Agency, Inc. v. HUB Int'l, Ltd.*,
   No. 2:13-CV-528, 2014 WL 5389936 (E.D. Tex. Mar. 25, 2014) ......................................... 6

*USC IP P'ship, L.P. v. Facebook, Inc.*,
   No. 6-20-CV-00555-ADA, 2021 WL 860007 (W.D. Tex. Mar. 8, 2021)................................. 7

*Williams O & G Res., LLC v. Diamondback Energy, Inc.*,
   No. 1:24-CV-133-DII, 2024 WL 4922546 (W.D. Tex. Aug. 1, 2024).................................... 10

**Statutes**

28 U.S.C. § 1404(a) ...................................................................................................... 2

**Rules**

Fed. R. Civ. Pro. 45...................................................................................................... 6

## I.   INTRODUCTION

Optiver US LLC and Optiver Trading US LLC ("Optiver") baselessly move this Court to transfer this case to the Austin Division. While HFT would not oppose requesting trial occur in Austin should the Court permit such, Optiver seeks to disrupt this action by requesting transfer of all proceedings immediately subject to all attendant delays. HFT opposes this request as it is uncalled for by the evidence Optiver presents and because it will cause undue delay in the adjudication of this action.

Optiver seeks transfer based on the purported convenience of witnesses it fails to identify or the convenience of HFT's witnesses that prefer Midland. Optiver likewise makes only cursory showings as to the remaining private interest factors, pointing only to third-parties available for compulsory process throughout the district (including here) and failing to identify any physical evidence at all. Optiver's showings as to the public interest factors are similarly deficient, providing no evidence that Austin is more convenient. Optiver simply fails to meet its burden in showing any individual factor weighs in favor of transfer. Accordingly, the Austin division is not "clearly more convenient", and this motion should be denied.

## II.   LEGAL STANDARD

In evaluating a motion to transfer pursuant to § 1404(a), the Court considers the Fifth Circuit's list of private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

The private interest factors include: (1) "the relative ease of access to sources of proof"; (2) "the availability of compulsory process to secure the attendance of witnesses"; (3) "the cost of attendance for willing witnesses"; and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*.

The public interest factors include: (1) "the administrative difficulties flowing from court congestion"; (2) "the local interest in having localized interests decided at home"; (3) "the familiarity of the forum with the law that will govern the case"; and (4) "the avoidance of unnecessary problems of conflict of laws." *Id.*

To support a claim for transfer under § 1404(a), a movant must demonstrate that the transferee venue is "clearly more convenient" than the current District. *Id.* Absent such an elevated showing, the plaintiff's choice of venue must be respected. *Id.*; *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) ("When the transferee venue is not clearly more convenient than the venue chosen by the Plaintiff, the Plaintiff's choice should be respected. When a defendant is hauled into court, some inconvenience is expected and acceptable. Assuming that jurisdiction exists and venue is proper, the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer.") (internal quotation marks and footnotes omitted).

Accordingly, transfer under 28 U.S.C. § 1404(a) is properly granted only if the moving party "clearly establishes good cause." *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024). "Good cause" is established when the movant shows that "the marginal gain in convenience will be *significant*," and its evidence "makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *Id.* Furthermore, when deciding a motion to transfer under § 1404(a), the Court may consider "undisputed facts outside of the pleadings, such as affidavits or declarations, but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Hammers v. Mayea-Chang*, No. 2:19-cv-181, 2019 WL 6728446, at *4 (E.D. Tex. Dec. 11, 2019).

2

## III.   ARGUMENT

Optiver fails to demonstrate any, much less a significant, marginal gain that will actually materialize by transferring this action to Austin. Instead, Optiver asks that offices, rather than witnesses, be considered and that imagined physical evidence be weighed. But offices and unidentified evidence are not factors in this analysis. In any case, Midland is a mere hour-long flight from Austin, eliminating the need, if any, for such flights does not result in a "significant" marginal gain in convenience as required. *In re Clarke*, 94 F.4th at 508. As shown below, all factors are either neutral or weigh against transfer. Transfer should be denied.

### a.   Access to Sources of Proof Does Not Favor Transfer

Optiver fails to identify any relevant physical evidence and concedes "the documents which are stored electronically will be just as available in Austin as they are in Midland/Odessa." Dkt. 27 at 6. As such this factor does not favor transfer but is instead neutral.

Optiver's claim that "[t]he vast majority of physical documents relevant to the case are located in either Austin or out of state" is unsupported. *See id*. The declarations cited in support do not so much as claim any physical documents exist. Mr. Fleurbaaij's declaration instead provides "[t]he vast majority of ***any*** physical documents related to the operation, development, and architecture of Optiver's FPGA boards ***would be*** located at Optiver's Austin facility." Dkt. 27-1 at ¶8 (emphasis added). Where "any physical documents" "would be located," does not actually say there are physical documents at all. Likewise, Mr. Pincombe's declaration contends "[t]he vast majority of any physical documents related to the procurement and finances of Optiver's FPGA boards is[sic] located at Optiver's US headquarters in Chicago,

3

IL." Dkt. 27-2 at ¶4.[1] Here too, the declarant does not say any physical documents actually exist, just that any such documents would be in Chicago. Moreover, Optiver makes no showing any such documents would be more easily accessed in Austin rather than Midland. This does not meet Optiver's burden.

Indeed, when pressed in discovery, Optiver again had to hedge that "[a]ny relevant physical documents or evidence are ***most likely*** located at Defendants' Austin, TX[sic]; there may also be physical evidence located in Defendants' Chicago, IL offices." Ex. A at 10 (emphasis added). Optiver cannot state physical documents exist or what they are. But as Optiver carries the burden and such empty statements do not carry its burden.

Optiver also contends it "maintains a limited inventory of the accused FPGA boards themselves at its Austin, TX facility." Dkt. 27 at 6. But this too does not show any sources of proof exist in Austin. Indeed, when HFT asked how "Optiver will access the sources of proof identified in defendant's brief," Optiver made no mention of this inventory. *See* Ex. A at 10. Rather, Optiver merely responded that "[a]ny relevant physical documents or evidence are most likely located at Defendants' Austin, TX [sic]" and "[i]t is significantly more convenient for Defendants to store and make such evidence available for inspection at its offices in Austin than to transport it an additional five hours to the Midland-Odessa division." *Id*. First, and again, Optiver does not actually contend any physical evidence exists, as such Optiver does not meet its burden. But second, even assuming the inventory does exist and that it exists in Austin that alone does not show Optiver would be inconvenienced by maintaining this case in Midland. The relevance of Optiver's inventory is unclear. Optiver does not establish: whether

---

[1] Moreover, Mr. Pincombe declares "Optiver documents relating to procurement of finances regarding its FPGA technology are stored electronically…" *Id*. As such, it seems all such documents are stored electronically making any physical documents duplicative.

these are fully configured boards; whether they would show the same thing their in-operation boards would; or whether they show something distinct from the source code that will dictate how the in-operation boards function. Optiver, even when pressed, does not answer these questions. Its supporting declaration does not clarify if these are awaiting design and inspection or if they are already customized. *See* Dkt. 27-1 at ¶5 ("Optiver purchases AMD FPGA chips before incorporating those chips into FPGA boards that Optiver designs and inspects … Optiver maintains a limited inventory of FPGA boards at its Austin, TX facility."). Indeed, from Optiver's motion it is unclear what it contends this inventory is relevant for or if Optiver would instead point to source code of operating boards as the relevant source of proof. As such, HFT directly asked Optiver how it would access its sources of proof, but this inventory is never mentioned. Accordingly, the inventory should not be weighed. As such the Court should equate this "inventory" with the unidentified physical documents and find Optiver has not met its burden to show they weigh in favor of transfer.

As Optiver agrees electronically stored documentation is equally available in Austin as in Midland and it cannot identify any physical evidence that may be more readily accessed anywhere else, this factor is neutral and does not favor Austin.

### b. Compulsory Process Does Not Favor Transfer

For purposes of this motion, HFT agrees the only relevant third parties are the named inventor[2] and AMD. However, Optiver is incorrect that AMD favors Austin. To be clear this factor is not the convenience of third-party witnesses, it is the availability of compulsory process. *See In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008) (en banc) *("Volkswagen II")*. Optiver cannot show that compulsory process is only available in the

---

[2] As explained below, while Mr. Badizadegan is a third party, he is a willing witness properly addressed under that factor. Ex. G.

Austin division.

Fed. R. Civ. Pro. 45 provides "[a] subpoena may command a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person reside, is employed, or regularly transacts business in person; or (b) within the state where the person resides, is employed, ore regularly transacts business in person, if the person … is commanded to attend a trial and would not incur substantial expense." Here, the Court is able to compel the deposition of AMD as AMD resides in the district. *See Sanger Ins. Agency, Inc. v. HUB Int'l, Ltd.*, No. 2:13-CV-528, 2014 WL 5389936, at *3 (E.D. Tex. Mar. 25, 2014). Likewise, the Court is able to compel trial testimony from AMD should AMD "not incur substantial expense." *Id*. As explained below, Optiver has not shown ***substantial*** expense would be incurred by AMD in testifying in Midland.

Optiver's focus on a five-hour drive and "multiple days away from work" is a distraction. First, any AMD witness would fly to Midland for trial and then return the same way. This is just over an hour flight, far less than the five-hour drive Optiver would have the Court focus on. Ex. B. Thus, an AMD witness would face just over two hours of total travel time not ten. In turn this means an AMD witness would not "likely require multiple days away from work and the expense of a hotel." Dkt. 27 at 7. Reasonably considering how AMD would provide a subpoenaed witness shows it would not incur substantial expense. In any case, HFT is willing to cover reasonable travel costs of any such witness at trial, obviating any potential substantial expense.

Again, this factor is neutral.

### c.   Willing Witnesses Do Not Favor Transfer

Here, Optiver directs the Court to its ***offices*** in Austin and Chicago and HFT's presence

in Connecticut. But offices do not testify, nor do they permit the Court to test if any witness is relevant or if travel to Austin over Midland would be more convenient. By failing to identify any witnesses, Optiver cannot show this factor supports transfer.

As to its own willing witnesses, Optiver argues because "Optiver has an office is Austin, which is where accused FPGA boards are designed and inspected, and thus where Optiver engineers with personal knowledge of the Accused Instrumentalities work," Austin is a more convenient forum. Dkt. 27 at 5. But Optiver does not identify a single engineer or other potential witness in Austin that it even might call. *See id*. While Optiver's FPGA boards are certainly relevant to the case, Optiver's motion fails to identify who has knowledge concerning them such that the Court might assess the relevance of that particular knowledge. *See In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) ("A district court should assess the relevance and materiality of the information the witness may provide."); *see also Intent IQ, LLC v. MNTN, Inc.*, Case No. 7:25-cv-00246-DC-DTG, Dkt. 55 at 3 (W.D. Tex, Mar. 23, 2026) ("[T]he defendant's failure to specifically identify witnesses prevents the defendant from meeting its high burden and prevents the Court from finding that this factor clearly favors transfer."); *USC IP P'ship, L.P. v. Facebook, Inc.*, No. 6-20-CV-00555-ADA, 2021 WL 860007, at *1-3 (W.D. Tex. Mar. 8, 2021) ("A party seeking a transfer to an allegedly more convenient forum carries a significant burden. … However, Facebook fails to provide specific information as to the identity of probable witnesses or even classes of witnesses. The assertion that the Austin Division would be more convenient for Facebook's witnesses without more is pure conjecture and lacks adequate specificity for the Court to accord it any weight."). Indeed, the supporting declaration cited by Optiver only states at a very high level what is done in Austin and not who might be called as a witness or what particular knowledge such an

individual has. *See* Dkt. 27-1 at ¶¶4-6. Similarly, Optiver notes "[o]ther Optiver witnesses with knowledge of the Accused Instrumentalities are based in Chicago, IL…" Dkt. 27 at 5. But Optiver again identifies no individual, nor does it explain what information they might testify on. As it is Optiver's burden to show Austin is clearly more convenient for willing witnesses, but it does not identify any individuals or demonstrate they have any relevant knowledge, this factor cannot favor transfer.

While Optiver's motion is entirely deficient, HFT has still sought to properly evaluate the issue of convenience through venue discovery. Optiver's responses to these requests only further underline that Optiver cannot meet its burden of showing Austin is clearly more convenient. When asked for a trial witness list with topics of testimony, Optiver instead identified just four individuals and their job titles. *See* Ex. A at 8. Optiver objected that identification of "topics" was "overly broad and unduly burdensome" and explained it would "answer this interrogatory … to the best of Defendants' knowledge at this early stage in the case." *Id*. at 7-8. If four names and job titles is "the best of Defendants' knowledge" as to whose testimony will be required at trial, it cannot meet its burden to show Austin is clearly more convenient.

Considering these four names as though Optiver properly identified them in its motion,[3] such an anemic disclosure does not meet Optiver's burden nor allow the Court to assess the relevance of the four witnesses. First, the only individual identified in Austin[4] has the job title "Hardware Lab Manager" but Optiver has provided no greater detail as to what relevant information he has. Ex. A at 8. Indeed, the additional material cited only provides an

---

[3] As these names were not raised in its motion, Optiver should be considered to have waived their identification for purposes of supporting its motion to transfer.

[4] Indeed, Optiver only being able to name a single witness in Austin despite its motion seeming to suggest this would be the location of the majority of its witnesses weighs against transfer and indeed Optiver's credibility as a whole.

organization chart showing the individuals that apparently answer to the "Hardware Lab Manager" but this chart likewise only provides similarly vague job titles like "Hardware Engineer." Ex. C (Optiver_000012077). Moreover, Optiver's interrogatory response provides no evidence that the "Hardware Lab Manager" manages anything related to this case. *See* Ex. A at 8. This leaves the Court with only a vague job title and Optiver's word that this individual has any relevant information. Second, the same is true of the three Chicago witnesses. One is a "FPGA Engineer" but again, there is no evidence that he deals with the relevant FPGAs or that he has knowledge of any of the accused functionalities of the accused FPGAs. *Id*. The other two are global heads of infrastructure and procurement. *Id*. While Optiver's infrastructure and procurement are relevant, it is not clear that Optiver's global heads would have relevant information. Indeed, their identification seems to go against the apex doctrine and it is more likely lower ranking employees will have the actual relevant information. Third, Austin is not significantly more convenient for these Chicago witnesses than Midland. Optiver's evidence suggesting the time to reach Midland from Chicago is more than 5 hours compared to Austin's 3 and many times the cost is confounding given HFT's own search suggests the difference is dramatically smaller. HFT has found the lowest flight costs differ by about $30 and the fastest by a mere hour and a half longer. Ex. D, Ex. E. Given the difference between the fastest and cheapest Austin and Midland flights is eclipsed by the difference among Chicago-Austin flights depending on the time of the flight and booking, *see* Ex. F, any additional cost and time to reach Midland is not a significant marginal gain in convenience. As such, the four potential witnesses HFT uncovered likewise does not weigh in favor of transfer.

Finally, each party witness HFT anticipates bringing, i.e. the inventor of each of the three asserted patents and a corporate representative, do not find Austin more convenient than

Midland. Ex. G[5], Ex. H. As such, the Court need not rely on such imprecise extrinsic evidence as the time of travel.

Opitver fails to demonstrate Austin is a more convenient venue for any relevant witness. The witnesses Optiver has discovered likewise are not clearly relevant and most would not find Austin materially, much less significantly, more convenient. Last, HFT's witnesses prefer Midland. As such, this factor weighs against transfer.

### d. Practical Problems Relating To Judicial Economy Do Not Favor Transfer

Optiver ignores this factor presumably conceding it is neutral, HFT agrees.

### e. Court Congestion Disfavors Transfer

Just recently, the Austin division, on its own analysis, found that this factor strongly favored intradivision transfer ***from Austin to Midland***. *Williams O & G Res., LLC v. Diamondback Energy, Inc.*, No. 1:24-CV-133-DII, 2024 WL 4922546, at *4 (W.D. Tex. Aug. 1, 2024). While an additional judge has since been assigned to the Austin division, the same statistics relied upon suggest there is still nearly 3.5 times as many cases filed in the Austin division over the Midland division. *See* https://www.txwd.uscourts.gov/wp-content/uploads/District%20Statistics/2024/Fiscal%20Year%202024%20Statistics%20Public%20Report.pdf (1,677 total case filings in Austin as opposed to 483 total case filings in Midland in 2024). As the Austin division itself explained it is more congested than the Midland division based on similar caseloads, this factor disfavors transfer.[6]

---

[5] Mr. Badizadegan is a willing witness properly addressed under this factor rather than compulsory process. Ex. G. Moreover, he finds Midland just as convenient as Austin. Optiver's speculation that the Austin division would be more convenient based on direct flights is inapposite.

[6] Optiver notes that "the case could be assigned to the same judges after transfer" thus render this and other factors neutral. But such is entirely speculative and while Optiver would not object to Judge Gilliland maintaining this action through pre-trial if transferred such would seem counter to Optiver's motion.

### f. Local Interest Factors Is Largely Neutral Because Infringement Largely Occurs Elsewhere

This factor "focus[es] on the *events*—not the *parties.*" *In re Clarke*, 94 F.4th 502, 511 (5th Cir. 2024). Optiver's recitation of *events* is far too vague to support this factor. Optiver contends the "accused FPGA boards *utilized in the United States* are customized and inspected in Austin and the employees responsible for such design and inspection are based in Austin." Dkt. 27 at 8 (emphasis added). Optiver concedes the infringement occurs across the nation, where the "accused FPGA boards [are] utilized." As such the local interest based on the infringing use is diffuse. *See In re Clarke*, 94 F.4th 502, 511 (5th Cir. 2024). While Optiver contends its work in Austin "gave rise to a suit," it makes no actual showing of that. Rather it describes its work in Austin as "customiz[ing] and inspect[ing]" FPGAs. Dkt. 27 at 8. But that does not appear to relate to its infringement at least because it is entirely unclear what customization or inspection Optiver performs. Moroever, there is no evidence that this work is relevant to infringement. *See* Dkt. 27 at 2. Despite having the burden here, Optiver's motion sheds no light on the matter. As such, Optiver has not shown any particular local interest in Austin. Rather the only local interest is national and diffuse.

## IV. CONCLUSION

Because all factors are neutral or disfavor transfer, Optiver has failed to show transfer would result in any marginal gain in convenience and its motion should be denied.

Dated: April 1, 2026                                Respectfully submitted,

                                                    */s/ Dale Chang*

                                                    Dale Chang
                                                    Marc A. Fenster
                                                    Brian D. Ledahl
                                                    Paul A. Kroeger

11

Susan Tull
Joshua Scheufler
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Tel: 310-826-7474
Fax: 310-826-6991


**ATTORNEYS FOR PLAINTIFF,**
**HFT Solutions, LLC**

12

██████████████

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing is being filed under seal pursuant to the Standing Order in this case.

*/s/ Dale Chang*

## CERTIFICATE OF SERVICE

I certify that on April 2, 2026, a true and correct copy of the foregoing document was electronically filed with the Court and served on all parties of record via electronic mail.

*/s/ Dale Chang*

13